306 Ga. 872
FINAL COPY

S19A0533.  FRANKLIN v. THE STATE.

BLACKWELL, Justice.

Cleandre Franklin was tried by a Fulton County jury and convicted of murder and other crimes in connection with the fatal shooting of Marvin Wiley. Franklin appeals, contending that the evidence is legally insufficient to sustain his convictions, that the trial court erred when it allowed a witness for the prosecution to testify notwithstanding that the witness violated the rule of sequestration, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no reversible error and affirm.[1]

---

[1] Wiley was killed in September 2015. A grand jury indicted Franklin in January 2016, charging him with murder with malice aforethought, murder in the commission of a felony (aggravated assault and possession of a firearm by a convicted felon), aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. Franklin was tried in November 2017, and the jury found him guilty on all counts. The trial court sentenced Franklin to imprisonment for life for malice murder, a concurrent term of imprisonment for five years for possession of a firearm by a convicted felon, and a consecutive term of imprisonment for five years for

1. Viewed in the light most favorable to the verdict, the evidence shows that Wiley left his home in southwest Atlanta on the afternoon of September 10, 2018, driving a red Pontiac G8 with red rims. Only moments later, two gunshots rang out, and a silver car sped past the house, failing to stop at a nearby stop sign. After relatives were unable to reach Wiley by phone, Parnell Hawkins[2] set out from the house and walked in the direction in which Wiley had driven. Hawkins was followed by Reginald Ball.[3] Hawkins and Ball found Wiley, slumped over the steering wheel of his Pontiac, which had run off the road a short distance from the house. Wiley had sustained a gunshot wound to the head, and he later died as a result of that wound.

---

possession of a firearm during the commission of a crime. The other counts were vacated by operation of law or merged with the crimes for which Franklin was sentenced. Franklin timely filed a motion for new trial, which he amended in July 2018. The trial court denied his motion in November 2018, and Franklin then timely filed a notice of appeal. His appeal was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

[2] Wiley and Hawkins were brothers, and they shared the home with Wiley's mother and some other relatives.

[3] Ball was in a relationship with Wiley's mother.

Investigators soon turned their attention to Franklin, who drove a silver Chevrolet Impala. The investigators learned that, earlier on the day of the shooting, Wiley had driven to the home of Alimah Franklin — Franklin's estranged wife — to confront her about an incident on a school bus involving their respective daughters. After heated words were exchanged, Wiley returned to his own home, and Franklin came to see Alimah. She told Franklin about the confrontation and that the man who confronted her drove a red car with red rims. Franklin then left Alimah's house, driving his silver Chevrolet, in search of a red car with red rims.

The investigators tried to arrange a meeting with Franklin, but they were unsuccessful. On October 12, police officers found Franklin's silver Chevrolet at a gas station in Mableton. The car was searched, and inside the passenger compartment, investigators found gunshot residue. On October 17, Franklin was arrested in Rome, where he was staying with a girlfriend.[4] Following his arrest,

---

[4] Franklin admitted to his girlfriend that he had "f\*\*ked up," but he did not elaborate.

Franklin agreed to speak with investigators.[5] He admitted that he shot at Wiley's vehicle, but he claimed that he did so only after Wiley and Hawkins blocked his car at an intersection and Hawkins pointed a gun at him.

At trial, Franklin argued that he shot Wiley in defense of self and that the shooting was justified, but the jury rejected that argument.[6] On appeal, Franklin contends that the State failed to present sufficient evidence to sustain his convictions, and he specifically argues that the State failed to disprove his claim of justification. In support of these contentions, Franklin points to conflicts in the evidence and questions about the credibility of Hawkins and other witnesses for the prosecution. But as we have

---

[5] Before he spoke with investigators, Franklin was advised of the Miranda warnings. See Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[6] Franklin did not testify at trial, but he relied on the evidence of his statement to investigators as the principal basis for his claim of justification. Franklin also pointed to evidence that two guns were found in Wiley's Pontiac, as well as the testimony of a witness who said that a passenger got out of the Pontiac immediately after the shooting. This evidence was contradicted by Hawkins, who adamantly denied that he was with Wiley at the time of the shooting and said that he only came upon the scene later.

explained time and again, "[i]t is for the jury to resolve conflicts in the evidence and questions of witness credibility, not this Court." Wright v. State, 296 Ga. 276, 284 (3) (766 SE2d 439) (2014). See also Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted)); White v. State, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010) ("[J]ustification [is] for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (Citation omitted)). Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that Franklin did not shoot Wiley in defense of self and was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Franklin contends that the trial court erred when it allowed

Jermaine Wiley[7] to testify after he violated the rule of sequestration.[8] When the rule of sequestration is invoked, witnesses are barred from the courtroom "so that each witness cannot hear the testimony of other witnesses[.]" OCGA § 24-6-615. Here, the rule of sequestration was invoked at the beginning of the trial, and it is undisputed that Jermaine was present for the testimony of several other witnesses before he testified. But the record shows that Jermaine attended the trial as an observer, not a witness. He was not under subpoena and, in fact, did not appear on any witness list. When he heard the testimony of other witnesses, he had no expectation that he would be called to testify. The prosecution decided to call Jermaine as a witness only after the prosecuting attorney was surprised by the testimony of another witness, who

---

[7] Wiley and Jermaine were brothers.

[8] Franklin also contends that the trial court erred when it allowed Hawkins to testify after Hawkins violated the rule of sequestration. The record does not, however, show that Hawkins violated the rule. Although Hawkins was present in the courtroom when his own criminal history was the subject of a discussion among the trial judge and the lawyers, the record fails to show that Hawkins was present for the testimony of any other witness. His presence during the conference between the judge and the lawyers does not implicate the rule of sequestration. See OCGA § 24-6-615.

said that a gun found in Wiley's car belonged to Jermaine. Over Franklin's objection, the trial court allowed Jermaine to testify that the gun was, in fact, his and that he was not present at the scene on the day of the shooting.

In the first place, it is not clear that Jermaine was a witness subject to the rule of sequestration at any point before the prosecution called him to the stand. And in any event, a trial court enjoys considerable discretion to decide whether the testimony of a witness who has violated the rule nonetheless should be allowed. See United States v. Wylie, 919 F2d 969, 976 (IV) (A) (5th Cir. 1990).[9] The rationale for disallowing the testimony of a witness who violates the rule of sequestration is the concern that the witness, having an opportunity to hear the testimony of others before he testifies, may inappropriately tailor his own testimony to the prior

---

[9] The text of OCGA § 24-6-615 differs significantly from the text of the sequestration provision of the old Evidence Code, and instead tracks in pertinent part the language of Federal Rule of Evidence 615. To the extent that a provision of the new Evidence Code deviates from the old Evidence Code and borrows its text from a Federal Rule of Evidence, we look to decisions of the federal appellate courts construing and applying the Federal Rule. Davis v. State, 299 Ga. 180, 185 (787 SE2d 221) (2016).

7

evidence. See <u>United States v. Bramlet</u>, 820 F2d 851, 855 (II) (7th Cir. 1987). But this concern is far less compelling when it comes to an unplanned witness like Jermaine. Because Jermaine did not expect to be called himself as a witness when he was present for the testimony of other witnesses, it seems unlikely that he would have been observing their testimony with an eye toward his own. Considering as well the absence of bad faith on the part of the prosecution and the limited scope of Jermaine's testimony, we cannot say that the trial court abused its discretion when it allowed Jermaine to testify. See, e.g., <u>United States v. Shurn</u>, 849 F2d 1090, 1094 (II) (B) (8th Cir. 1988) (allowing testimony of limited scope by an unplanned witness).

Even so, Franklin contends, the trial court should have given a curative instruction to the jury about his violation of the rule of sequestration. But Franklin did not ask for a curative instruction, and we see no plain error in the failure to give such a charge.

> As we have explained before, a failure to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to

8

> charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

Shaw v. State, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013) (citation and punctuation omitted). Even if the failure to give a curative instruction was error, it was not obvious error, inasmuch as Franklin has not identified any controlling precedent that requires a curative instruction on the rule of sequestration when an unexpected witness is allowed to testify as the result of surprise developments at the trial and the witness had been in attendance at the trial prior to the occurrence of those developments. See Simmons v. State, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) (holding that "[a]n error cannot be plain where there is no controlling authority on point") (citation and punctuation omitted). Moreover, Franklin cannot show harm from the failure to give a curative instruction. The jury presumably saw Jermaine in the courtroom during the testimony of other witnesses, defense counsel brought out that circumstance in her cross-examination of Jermaine, and counsel talked about it in closing argument. The jury was able to adequately

9

assess Jermaine's credibility, and we see no reason to think that a curative instruction would have made any difference at all. See Hampton v. State, 302 Ga. 166, 168-169 (2) (805 SE2d 902) (2017) (stating that to establish plain error the appellant must "make an affirmative showing that the error probably did affect the outcome below") (citation and punctuation omitted).[10]

3. Last, Franklin contends that his trial counsel was ineffective because she failed to file a motion to bifurcate and failed to correct a misimpression on the part of the prosecuting attorney about the criminal history of a witness. To prevail on a claim of ineffective assistance, Franklin must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104

---

[10] Franklin also alleges that his trial counsel was ineffective because she failed to object, adequately cross-examine Jermaine, or ask for a curative instruction about his violation of the rule of sequestration. But counsel did object, and she did cross-examine him about his presence in the courtroom during the testimony of other witnesses. Moreover, Franklin cannot show that he was prejudiced by the failure to ask for a curative instruction. See Hampton, 302 Ga. at 168-169 (observing that the harm element of plain error and the prejudice element of Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), are the same).

SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Franklin must show that the lawyer performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Franklin must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Franklin has failed to carry it.

(a) Franklin argues that his trial counsel was ineffective because she failed to file a motion to bifurcate his trial for possession of a firearm by a convicted felon from his trial for murder and the

other charges. But this Court has held that when possession of a firearm by a convicted felon is charged as a predicate felony for felony murder, bifurcation is not warranted. See Atkinson v. State, 301 Ga. 518, 525-526 (6) (e) (801 SE2d 833) (2017). Franklin was indicted for, among other things, felony murder predicated on possession of a firearm by a convicted felon. For this reason, bifurcation would not have been necessary, and counsel was not deficient for failing to request it. See Cooks v. State, 299 Ga. 787, 790 (3) (792 SE2d 389) (2016).

(b) Franklin also contends trial counsel was ineffective because she failed to inform the prosecuting attorney before trial that Alimah previously had entered a guilty plea as a first offender and, therefore, could not properly be impeached on general credibility grounds with that plea. See Davis v. State, 269 Ga. 276, 277-278 (2) (496 SE2d 699) (1998). The prosecuting attorney apparently did not understand the circumstances of that plea, and at trial, he asked Alimah if she had been convicted for lying. Franklin's counsel promptly objected and the trial court sustained the objection.

Franklin now argues that his counsel should have presupposed that the prosecuting attorney would not understand the circumstances of the plea and done something to head off the attempted impeachment before it occurred. But as trial counsel explained at the hearing on the motion for new trial, she did not inform the prosecuting attorney before trial about the circumstances of the plea because she had no reason to think that the prosecuting attorney misunderstood them and would attempt to impeach Alimah with a nonexistent conviction. It was not deficient in this instance for trial counsel to fail to foresee that the prosecuting attorney would try to elicit inadmissible evidence as a result of a misunderstanding on his part. See Johnson v. State, 286 Ga. 787, 791 (2) (692 SE2d 575) (2010) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." (Citation and punctuation omitted)).

Judgment affirmed. All the Justices concur.


DECIDED OCTOBER 7, 2019.

13

Murder. Fulton Superior Court. Before Judge Whitaker.

*Christina M. Kempter*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.