FINAL COPY
309 Ga. 593

S20A0727.  CLAY v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, James Rashad Clay, acting pro se,
appeals his convictions for malice murder and related offenses in
connection with crimes committed against Rashonda Patterson and
Joseph Emener.[1]  On appeal, Clay enumerates numerous errors,

---

[1] On September 5, 2012, a Gwinnett County grand jury indicted Clay for
the malice murder of Patterson (Count 1), the felony murder of Patterson
predicated on aggravated assault (Count 2), the aggravated assault of
Patterson (Count 3), the aggravated assault of Emener (Count 4), and
possessing a firearm during the commission of a crime (Count 5).  Clay was
tried from May 20 to 22, 2014, and was convicted of all charges.  On June 3,
2014, the trial court sentenced Clay to life in prison without parole for malice
murder (Count 1), 20 years consecutive for the aggravated assault of Emener
(Count 4), and five years consecutive for the weapon charge (Count 5).  The
remaining counts were either merged or vacated by operation of law for
sentencing purposes.  See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d
479) (1993).
     Clay filed a motion for new trial through counsel on June 6, 2014.  A few
days later, Clay filed a pro se notice of appeal.  The trial court dismissed the
pro se notice because it was filed by Clay and not by his counsel.  In August
2015, Clay filed a pro se motion requesting new appellate counsel, which the
trial court subsequently denied.  Later, in February 2017, new counsel was
appointed to represent Clay on appeal.  Thereafter, on March 27, 2017, Clay
filed another motion to proceed pro se.  The trial court held a hearing on Clay's
motion and, after ensuring that Clay understood his rights, the trial court

and, for the reasons set forth below, we affirm.

1.   As an initial matter, Clay enumerates many alleged errors that are not preserved for appellate review.  Specifically, Clay asserts: that the State violated *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), when it failed to produce a gunshot residue test;[2] that his indictment was void because it was not returned in open court, because it contained numerous substantive and non-amendable defects, and because he is "actually innocent" of the charges;[3] that there were issues concerning the composition of his jury pool and the qualification of a member of the petit jury; that

---

granted Clay's motion and allowed appellate counsel to withdraw from the case.

A hearing on Clay's motion for new trial was held in November 2018. Clay filed a notice of appeal to this Court, which was subsequently dismissed as there was no ruling on Clay's motion by the trial court.  See Case No. S20A0151 (dismissed October 7, 2019).  After the remittitur issued, the trial court denied Clay's motion for new trial on November 6, 2019.  Clay then timely filed a notice of appeal to this Court.  The appeal was docketed to the April 2020 term of this Court and was submitted for a decision on the briefs.

[2] Notably, nothing in the record indicates that the State withheld a gunshot residue test.  Clay also appears to allege that the trial court erred by excluding evidence of the gunshot residue test from trial.  However, there is nothing in the record to indicate that the trial court made such a ruling.

[3] Clay does not make a freestanding actual innocence claim.  Instead, he argues that, because he is innocent, the indictment is void.

the State violated *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986); that the State committed prosecutorial misconduct by allegedly violating his attorney-client privilege prior to trial;[4] and that the judge who presided over his case did so in violation of Uniform Superior Court Rule 3.1 (discussing method of assignment of cases). Because Clay failed to raise these issues in the trial court below and to obtain a ruling on them, and because none of these claims assert an evidentiary or instructional error reviewable for plain error, see *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016) (holding that the plain error test for alleged jury instruction errors also applies to evidentiary errors), they are not preserved for appellate review by this Court, see *Harris v. State*, 304 Ga. 276, 279 (2) (818 SE2d 530) (2018).

2. Turning to the enumerations preserved for appellate

---

[4] In a related enumeration, Clay contends that his trial counsel created a conflict of interest because, he alleges, counsel divulged privileged information to the prosecutor. In support of this claim, Clay cites a letter the prosecutor sent to trial counsel concerning a court-ordered competency evaluation. The letter, however, is not in the record, and there is no record evidence that trial counsel disclosed any privileged information to the prosecutor in relation to the court-ordered competency evaluation.

review, Clay first asserts that the evidence presented at trial was insufficient to support his convictions. In support of this claim, Clay attacks the evidence presented against him at trial. However, "[t]his Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

Viewing the evidence presented at trial in this light, the record shows that Clay had been a resident at the Suburban Lodge, an extended-stay motel located in Gwinnett County. However, prior to the day of the crimes, Clay was banned from the premises. Despite this, Raymond Robertson, a resident at the motel, saw Clay on the property the day before the crimes. Then, on July 5, 2012, Clay entered the motel and rode the elevator to the third floor with Ronald Collins, another resident at the motel who had known Clay for years. During their elevator ride, Clay took out a 9-millimeter pistol and cocked it. Collins asked "who you got that for," to which

Clay responded, "it ain't for you." The men exited the elevator together and walked in opposite directions; when Collins reached his room, he called the front desk to inform them that Clay was on the property.

Meanwhile, Patterson was in her motel room with her daughter Miyah, her mother Denise, and her fiancé Emener. The group was getting ready to watch a movie when they heard a knock on the door. Both Emener and Patterson approached the door. Patterson looked through the peephole and asked the person standing on the other side of the door to identify himself. Just then, two shots were fired through the closed door. One bullet struck Patterson in the head, killing her immediately, and the second bullet struck Emener in his leg.

Law enforcement officers arrived at the scene and found Patterson unresponsive. Officers located two bullet holes in the door, two cartridge casings outside the door, and one bullet inside the room. During Patterson's autopsy, the medical examiner retrieved a single bullet from Patterson's head and noted the

presence of wood splintering around her face; the medical examiner concluded that Patterson died as a result of the gunshot.

Witnesses provided a description of Clay to officers, and, after a short canvass of the vicinity, Clay was found at a nearby apartment complex. He was carrying a 9-millimeter pistol that the State's firearm examiner later matched to the shell casings and bullets collected from the scene and from Patterson's autopsy.

Clay testified at trial and denied being at the motel on the date of the murder and denied committing the shooting. However, he admitted holding a grudge against Emener's identical twin brother based upon allegations that Emener's brother had abused Clay's mother.

Based on the foregoing, the evidence presented at trial was sufficient to enable a rational trier of fact to find Clay guilty beyond a reasonable doubt of the crimes for which he was convicted.[5] See

---

[5] Clay also contends that the trial court abused its discretion when it declined to grant a new trial pursuant to the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21. However, it is well settled that our review of a trial court's denial on the general grounds is limited to sufficiency of the evidence. See *Lewis v. State*, 296 Ga. 259, 261 (3) (765 SE2d 911) (2014).

*Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

3.    Clay argues that he is entitled to a new trial because his convictions were obtained based upon the perjured testimony of lay witnesses Collins and Robertson.  See OCGA § 17-1-4.  However, Clay has produced no evidence that either witness has been convicted of perjury or that their prior testimony was "the purest fabrication." (Citation and punctuation omitted.) *Glover v. State*, 296 Ga. 13, 15 (2) (764 SE2d 826) (2014).  To the extent Clay argues that the witnesses' statements at trial qualify as perjury, that argument fails because such statements relate only to the witnesses' credibility and are "merely impeaching."  Id.[6]

4.    Clay alleges that the trial court erred by: (a) allowing the introduction of "tainted" gun evidence at trial; (b) admitting Clay's custodial statement into evidence because he did not make that

---

[6] Clay also argues that his trial counsel was constitutionally ineffective for failing to impeach Robertson and Collins with their prior inconsistent statements.  However, the record shows that counsel thoroughly cross-examined these witnesses concerning their prior statements to law enforcement officers.  Accordingly, Clay has failed to show deficient performance under *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

statement freely and voluntarily; and (c) failing to suppress the pre-trial identifications by Collins and Robertson.  We address each of these claims in turn.

(a) *Gun evidence.*

At trial, the court admitted the 9-millimeter pistol recovered from Clay into evidence.  The State also called its lead detective as a witness.  During his testimony, the detective explained that, in order to determine the cartridge capacity of the confiscated weapon, he removed unfired rounds from his duty weapon and placed them into the magazine of Clay's 9-millimeter until it was full.  The detective testified that the magazine could only hold two additional rounds before the magazine was at full capacity.  On appeal, Clay alleges that the trial court erred by admitting the 9-millimeter into evidence because, he alleges, the lead detective's actions amounted to "evidence tampering."  However, because Clay did not object to this testimony or the admission of the gun as evidence at trial, we

can review this claim only for plain error.[7] See *Gates*, 298 Ga. at 327

(3).

Other than providing a conclusory citation of OCGA § 16-10-

94,[8] the statute criminalizing evidence tampering, Clay cites no legal

authority or record evidence to support his claim that the detective's

actions amounted to tampering. Nor have we found any such

authority to support his proposition. Because "[a]n error cannot be

plain where there is no controlling authority on point," (Citation and

---

[7] As this Court has previously explained,

The standard for a plain error review of rulings on evidence is that there must be an error or defect that has not been affirmatively waived by the appellant, the legal error is clear or obvious, the error must have affected the appellant's substantial rights, and if the aforementioned three requirements are satisfied, the appellate court has the discretion to remedy the found error but should do so only if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings; consequently, beyond showing a clear or obvious error, the appellant must affirmatively show that the error probably did affect the outcome below.

*Davis v. State*, 302 Ga. 576, 581 (2), n.5 (805 SE2d 859) (2017).

[8] A person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence.

OCGA § 16-10-94.

punctuation omitted.) *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016), Clay has failed to show that the trial court's ruling amounted to clear or obvious error, let alone plain error.

(b)  *Clay's statement.*

Next, Clay argues that the trial court erred by admitting his custodial statement to law enforcement into evidence at trial because officers made "inappropriate statements" during the interview.[9]  Prior to trial, Clay filed a motion to suppress his statement to officers, arguing that detectives offered him a hope of benefit in violation of OCGA § 24-8-824 by stating that Clay could face different potential charges depending on what had occurred, that those charges carried different sentences, and that Clay had an opportunity to help himself out by telling the truth.  To the extent that Clay is arguing this same issue on appeal, it fails because we

---

[9] Clay also makes a blanket claim that his statement was inadmissible because it was obtained after an alleged illegal arrest.  However, because he offers no argument or evidence as to why his arrest was illegal, this claim is deemed abandoned.  See Supreme Court Rule 22.  See also *Burrell v. State*, 301 Ga. 21, 26 (3) (799 SE2d 181) (2017) ("It is not this Court's job to cull the record on behalf of [the] Appellant to find alleged errors.") (citation and punctuation omitted).

have repeatedly held that these types of statements by law enforcement officers do not amount to a hope of benefit under OCGA § 24-8-824. See *Dawson v. State*, 308 Ga. 613, 620 (3) (842 SE2d 875) (2020) (listing cases where similar statements by law enforcement did not constitute a hope of benefit). Accordingly, the trial court did not err by admitting Clay's statement at trial.

(c) *Witness identifications.*

Next, Clay challenges the witness identifications of him by Collins and Robertson. We see no error. Concerning Collins's out-of-court identification, Clay argues that it resulted from an impermissibly suggestive identification procedure because Collins saw Clay being transported from the scene in handcuffs prior to his identification. This, Clay argues, tainted Collins's subsequent in-court identification.

As an initial matter, while Clay did seek to suppress Collins's photo lineup identification, that evidence was not introduced at trial. And, because Clay did not object to Collins' in-court identification, we can review this claim only for plain error. See

*Gates*, 298 Ga. at 327 (3). Once again, Clay has failed to show that the trial court committed clear or obvious error. It is well settled that "even if an out-of-court identification is impermissibly suggestive, a subsequent in-court identification is admissible if it did not depend upon the prior identification but had an independent origin." (Citation and punctuation omitted.) *Sharp v. State*, 286 Ga. 799, 803 (4) (692 SE2d 325) (2010). Assuming arguendo that the pre-trial identification procedure was impermissibly suggestive, the record shows that Collins's in-court identification stemmed from an independent origin. See *Humphrey v. State*, 281 Ga. 596, 597 (1) (642 SE2d 23) (2007). Collins testified that he had known Clay for years, that he had worked with Clay's mother, and that, because of that relationship, Collins tried to be a father figure to Clay. Accordingly, Clay has failed to show plain error concerning Collins's in-court identification.

Regarding Robertson's photo lineup identification, Clay argues that the identification should have been suppressed because the evidence at trial showed that Robertson identified Clay from a photo

lineup over a month after the crime after seeing news reports of Clay's arrest. However, a challenge such as this goes to the weight of the evidence, not the admissibility. In other words, Clay is not challenging the identification procedure used by law enforcement, but, instead, is challenging the weight and credibility of Robertson's identification. And, such a question is specifically reserved for the jury. See *Franklin v. State*, 306 Ga. 872, 874 (1) (834 SE2d 53) (2019) ("[I]t is for the jury to resolve conflicts in the evidence and questions of witness credibility, not this Court.") (citation and punctuation omitted).

5. Next, Clay alleges that the Superior Court Clerk of Court and the court reporter falsified all of Clay's transcripts. However, because Clay presents no evidence to support this assertion, this claim fails.

6. Finally, Clay argues that the four-year delay between the filing of his motion for new trial and the trial court rendering a decision on the same violated his right to due process. See *Chatman v. Mancill*, 280 Ga. 253 (626 SE2d 102) (2006). "In assessing a due

process claim premised on a post-conviction delay, we generally look at four factors: 'the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" (Citations omitted.) *Norman v. State*, 303 Ga. 635, 642 (5) (814 SE2d 401) (2018). "But where prejudice is clearly lacking, we will not reverse a conviction, even if the other factors favor the defendant." Id. This requires a showing that the post-conviction direct appeal delay prejudiced "the ability of the defendant to assert his arguments on appeal," leading to "a reasonable probability that, but for the delay, the result of the appeal would have been different." (Citations and punctuation omitted.) Id. Here, Clay has failed to argue, let alone show, that a reasonable probability exists that he would have prevailed on appeal but for the post-conviction delay. Consequently, he cannot establish a due process violation.

*Judgment affirmed.  All the Justices concur.*

DECIDED AUGUST 24, 2020.

Murder. Gwinnett Superior Court. Before Judge Turner.

James Rashad Clay, *pro se.*

*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Samuel R. d'Entremont, Daniel Sanmiguel, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General,* for appellee.