311 Ga. 557
FINAL COPY

S21A0321.  POPE v. THE STATE.

WARREN, Justice.

Chauncey Arthur Pope was convicted of malice murder, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon in connection with the shooting death of Derrick Lamar Brooks.[1]  On appeal, Pope's sole

---

[1] Brooks was shot on December 14, 2014, and died on February 26, 2015. A Fulton County grand jury first returned an indictment in this case in 2015, but on March 11, 2016, the grand jury re-indicted Pope for malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  At a jury trial in May 2018, Pope was found guilty on all counts.  The trial court sentenced Pope to serve life in prison for malice murder, a consecutive term of five years for possession of a firearm during the commission of a felony, and a concurrent term of five years for possession of a firearm by a convicted felon.  The felony murder counts were vacated by operation of law, and the trial court merged the aggravated assault count for sentencing purposes.  On May 23, 2018, Pope timely filed a motion for new trial, which new counsel amended on October 17, 2019.  The trial court denied the amended motion on September 14, 2020.  That same day, Pope filed a notice of appeal.  The case was docketed in this Court to the term beginning in December 2020 and submitted for a decision on the briefs.

contention is that his trial counsel provided ineffective assistance by failing to request a pre-trial immunity hearing. We conclude that Pope's trial counsel was not constitutionally deficient and affirm Pope's convictions.

The evidence presented at Pope's trial showed the following.[2] On the night of December 14, 2014, a crowd of "over ten" people, some of whom were drinking and gambling, were at an "after-hours spot" at a "recording studio" in Atlanta. Angelita Hixon testified that she was at the studio that night and recalled seeing Pope and Brooks arguing by the pool table. It appeared that the two were arguing over a dice game, though the altercation did not get physical. Following the argument, someone suggested that Hixon give Brooks a ride home, something Hixon often did for her friends at the studio. Hixon went outside and got into her car, which was facing the front door of the studio. Pope and Brooks came out of the

---

[2] Pope does not raise the sufficiency of the evidence on appeal. And under *Davenport v. State*, 309 Ga. 385, 399 (846 SE2d 83) (2020), we no longer as a matter of course consider sufficiency of the evidence sua sponte in non-death penalty cases.

2

studio shortly after she did, still arguing. Hixon was reluctant to testify at trial about the shooting, but in a pre-trial statement to a detective, said that Pope shot Brooks in the knee and then stood over Brooks and shot him in the head. Moreover, an investigator who interviewed Hixon before trial testified that Hixon told him that, a few days after the shooting, Pope offered her money not to testify at trial against him. At trial, Hixon testified that Brooks was not armed on the night he was murdered.

Another witness at the studio that evening, Tiffany Lewis, saw Pope and Brooks talking near a pool table. Pope was upset with how close Brooks was standing to him, telling him to "back up off me." Later that night, Lewis was in Hixon's car and observed Pope, Brooks, and another man arguing near the front door. Lewis testified that Pope walked around the side of the building, and that a few minutes later, Brooks came outside and began shouting insults and racial epithets in Pope's direction. Pope returned to the front of the building, which prompted Lewis to exit Hixon's vehicle and head inside to find help with the situation. As Lewis walked toward the

door, she noticed Pope reach toward his side. Lewis heard two gunshots shortly after going inside the studio. Pope came back inside the studio and said, "Oh, hell no, what the f*** he done made me do"; "I told him not to f*** with me, I told him, I told him." Lewis testified that she saw Pope with a gun that night, but that she never saw Brooks with one. She also did not see Brooks "pull anything from his side" or have "anything in his hands" and added that Brooks did not run at Pope or act "aggressive" toward him.

Pope testified at trial about his interactions with Brooks, claiming that they got into a disagreement while Pope was shooting dice. According to Pope, Brooks made some comments about Pope losing his dice game. Pope told Brooks to "watch out." Brooks then got "belligerent," and Pope told Brooks to "leave [him] alone." Brooks, however, remained in Pope's "personal space" and acted like he wanted "to fight." As Pope tried to get back to his dice game, Brooks "trie[d] to sucker-punch" Pope. Pope, who had a gun, pulled it out and pointed it at the ground. Brooks told Pope to go ahead and shoot, and Pope told Brooks to "leave me the hell alone." At

4

this point, the person who ran the studio approached Pope and Brooks and asked them what was happening. Pope went outside, where he tried to get into a friend's pickup truck. The truck, however, was locked. Pope then walked back to the front door of the studio. Brooks was coming out the door, yelling at Pope, and opened a back door of Hixon's car and acted like he was going to get in. Pope further claimed that Brooks threatened to "kill [him]," and that just as Pope told Brooks that Brooks should leave, Brooks charged at Pope. According to Pope, Brooks was holding one of his hands behind him, "like he's concealing something." Brooks was moving "pretty fast" and Pope was "petrified." As Brooks got to within "arm's length" of Pope, Pope shot Brooks twice. Pope then left the studio with a friend.

Brooks suffered gunshot wounds to his leg and head and was taken to a local hospital, where he later died. Law enforcement officers did not find a weapon on Brooks.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was

deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would

6

have followed such a course." Id. (citation and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

In his amended motion for new trial, Pope contended that trial counsel was constitutionally ineffective for failing to file an immunity motion before trial. See OCGA § 16-3-24.2 ("A person who uses threats or force in accordance with [certain statutes governing justification as a defense, including self-defense,] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 of Article 4 of Chapter 11 of this title."). At the hearing on the motion for new trial, Pope's trial counsel testified that her primary defense theory was self-defense

and that, because Pope was a convicted felon, she was "under the misimpression for a while" that she could not file an immunity motion, but that she "was disabused of that notion at some point" before trial.[3]  She then "determined that it wasn't worth going in front of the [prosecutor]" with the defense theory before trial.  Trial counsel also added that she did not think that the trial "judge would find it sufficiently compelling to grant . . . an immunity motion, and we just saved it for trial."

Pope contends that it was objectively unreasonable for trial counsel not to move for immunity under OCGA § 16-3-24.2 in a self-defense case where, as here, the defendant intends to testify at trial.  In his brief on appeal, Pope argues that because he "had to testify at trial if he had any hope of acquittal on self-defense grounds,"

---

[3] "Prior to 2014, a felon in possession of a firearm generally could not assert a claim for immunity from prosecution under OCGA § 16-3-24.2 for crimes involving the use of deadly force." *State v. Remy*, 308 Ga. 296, 296 (840 SE2d 385) (2020).  However, at the time of Pope's crimes in December 2014, a felon like Pope, who was charged with possession of a firearm in violation of OCGA § 16-11-131, was "no longer categorically precluded by the final clause of OCGA § 16-3-24.2 from seeking immunity from criminal prosecution under that statute," *Remy*, 308 Ga. at 297, and Pope's status as a convicted felon would not preclude a finding of immunity as a matter of law.  See id. at 300.

(emphasis omitted) testifying before trial at an immunity hearing and gaining the potential benefit of forgoing a trial entirely "would have been strategically sound."

But even if requesting an immunity hearing would have been a reasonable strategy, that does not mean that trial counsel's different strategy was objectively unreasonable. See *Lanier v. State*, 310 Ga. 520, 525 (852 SE2d 509) (2020) ("The fact that appellate counsel would have pursued the defense in different ways does not render trial counsel ineffective.") (citation and punctuation omitted); *Szorcsik v. State*, 303 Ga. 737, 743 (814 SE2d 708) (2018) ("[W]hile other counsel, had they represented appellant, may have exercised different judgment, the fact that the trial counsel . . . made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.") (citation and punctuation omitted).

Pope has failed to show how his trial counsel's strategic

decision not to reveal the defense theory to the prosecutor before trial, and instead to wait and present Pope's self-defense claim to the jury, was objectively unreasonable. Because Pope has not established that no competent attorney would have chosen not to pursue a pre-trial immunity hearing under the circumstances of this case, he has failed to show that his trial counsel's performance was constitutionally deficient, and his claim fails. See *Broxton v. State*, 306 Ga. 127, 138 (829 SE2d 333) (2019) (where trial counsel was not asked why he did not file a pre-trial immunity motion, his decision to forgo such a motion was presumed strategic because it "may be reasonable for trial counsel to forgo a pre-trial immunity motion so as to avoid subjecting his client to pre-trial cross-examination, or for counsel to elect to demonstrate self-defense to the jury, rather than to the judge"); *Dent v. State*, 303 Ga. 110, 119 (810 SE2d 527) (2018) (where "trial counsel testified that it was a strategic decision not to file . . . a [pre-trial] motion [for immunity from prosecution] inasmuch as he did not want to expose [defendant] to pre-trial cross-examination from the State, thereby previewing [defendant]'s

anticipated trial testimony, and that he chose to attempt to demonstrate self-defense to the jury, as opposed to the judge," defendant "failed to demonstrate that trial counsel's tactical decision was unreasonable").

*Judgment affirmed. All the Justices concur.*


Decided May 17, 2021.

Murder. Fulton Superior Court. Before Judge Newkirk.

*John R. Monroe*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.

11