**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 18, 2022**

# In the Court of Appeals of Georgia

A21A1315. PARRISH v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Emery Parrish on three counts of voluntary manslaughter (as a lesser-included offense for one count of murder and two counts of felony murder), aggravated assault, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, reckless driving, two counts of leaving the scene of an accident, and possession of cocaine. On appeal, Parrish contends the trial court erred in (1) allowing him to be impeached with a statement drafted by his trial counsel, or alternatively, denying his claim that his counsel rendered ineffective assistance in drafting the statement, (2) providing a confusing jury instruction as to his justification defense, and (3) refusing to instruct the jury as

to aggravated assault by the victim in connection with that defense. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the evening of August 18, 2012, Ayokunle Lumpkin—a recent Georgia State University graduate and former soccer player for the school—went to a post-match party at 270 Milton Avenue, a house leased by several current GSU soccer players. Some time after 1:00 a.m., a few of the party's attendees were hanging out on the front porch of the house when they saw a dark-colored Ford Thunderbird speeding down the rain-soaked street, lose control, crash through a fence in the neighboring yard, and hit an SUV parked in the students' driveway before spinning out in the front yard. The vehicle then spun its wheels for a moment, ultimately gained traction, and drove off from the yard. But after traveling a short distance down the street, the Thunderbird's damaged front bumper began dragging between the tire and pavement, forcing it to stop.

At this point, the party attendees who witnessed the crash alerted others inside the house, including Jessica Chambliss, the owner of the SUV that was struck by the Thunderbird. Chambliss, Lumpkin, and approximately ten others from the party then

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

2

headed down the street to where the Thunderbird stopped and noticed the driver had exited the car and was attempting to tear off the front bumper that was impeding it. As the group approached the vehicle, the driver—later identified as Parrish—appeared disoriented. Chambliss confronted Parrish about trying to leave after hitting her SUV and informed him that she and others were calling the police. Hearing this, Parrish became agitated, exclaiming that there was no reason "to get the cops involved." Undeterred, several of the party attendees—including Lumpkin—called 911 to report the incident, while one or two others took cell-phone pictures of or wrote down the Thunderbird's license plate.

But rather than provide any information, Parrish seemed intent on leaving the scene and made a cell phone call, during which several of the party attendees heard him say that he was "in the cut by the trap" and needed to be picked up. And upon hearing that Parrish appeared to be calling friends for assistance rather than the police, Chambliss confronted him again, and he responded by elbowing her in the face, knocking her backward to the ground. Immediately, several of the party attendees intervened to separate the two, and one attendee—Rufus Thompson—engaged in a shoving match with Parrish, pushing him toward the passenger side of the vehicle. At the same time, another attendee attempted to punch

Parrish, but with Thompson and others in his way, made only brushing contact. Once they were near the passenger side of the vehicle, the shoving subsided, at which point Lumpkin—who was standing near the driver's side—informed the crowd that the police were on the way. Parrish then darted back to the driver's side, leaned in to reach into the vehicle's center console, pulled out a handgun, and fired at close range into Lumpkin's chest. Then, as the party attendees scattered, Parrish fired at least two more shots before getting back into the Thunderbird and speeding away. Less than a mile from the scene of the shooting, he collided with another motorist, severely damaging that vehicle and sending it spinning off the road. Even so, Parrish continued his flight, threw the gun away at some point, and finally stopped his vehicle at the back of an apartment complex parking lot a few miles away.

Back at the scene of the shooting (after Parrish fled), Chambliss and others saw Lumpkin lying in the street with a bullet wound in the center of his chest. Several party attendees then again called 911, and Chambliss ran to Lumpkin to try to render aid. Soon thereafter, police officers and an ambulance arrived. Chambliss rode in the ambulance with Lumpkin to the hospital, but efforts to save him were unsuccessful.

Meanwhile, officers at the scene began their investigation, which included interviewing the numerous party attendees. Additionally, a GSU Ph.D. student—who

4

lived in a house just around the corner from where the party was being held—told police that she was on her front porch when she heard the sounds of an automobile accident. She also heard numerous voices, including a female asking for someone to call 911 and a responding male argue that there was no need to call the police. The Ph.D. student then went inside to get her phone and called 911 to report the accident. Then, as she walked back onto her porch, she heard gunshots, and immediately called 911 again. Seconds later, she saw a car speeding past where her street connected to Milton Avenue.

While the investigation at the scene of the shooting continued, another police officer—who had originally been dispatched to that scene—received a second dispatch, diverting him to the scene of a nearby motor vehicle hit-and-run that was believed to be connected to the shooting. There, the officer spoke with the motorist whose car had been struck by a vehicle that never stopped, and the officer observed what appeared to be debris from a Ford Thunderbird on the street. Upon concluding his interview with the motorist, the officer decided to follow a hunch—based on his past experiences working in this precinct—as to where the Thunderbird may have been abandoned; and so he proceeded to an apartment complex less than a few miles away. And indeed, at the back of the apartment complex parking lot, the officer

5

discovered a badly damaged Ford Thunderbird with a license plate matching the number provided by several of the party attendees. Subsequently, police officers impounded the vehicle, and, in searching it, found a small bag of cocaine, a bullet shell casing, and some documents—including a fairly recent receipt from an oil change and another from a school—both bearing Parrish's name. The vehicle's tag and registration, however, indicated that it belonged to Tyrone Jackson.

Parrish and Jackson were close friends, and Jackson occasionally stayed at Parrish's apartment. And over the course of the night following the shooting, Parrish sent Jackson several text messages. At approximately 5:30 a.m., Parrish sent Jackson a text message stating, "They got [the] car." Later that afternoon, Jackson called the police to report that his Thunderbird had been stolen. When police asked him who had access to the vehicle, Jackson did not mention Parrish. Later that day, when police informed Jackson that his vehicle been recovered, he seemed to express no surprise.

Less than one week later, Parrish turned himself in to police. Around this same time, Parrish's counsel provided the police with an unsigned statement, explaining that following the collision with Chambliss's SUV, Parrish tried to provide his insurance information, but the crowd of party attendees threatened and pushed him.

6

The statement further claimed that Parrish ultimately feared for his own life and, thus, grabbed his gun and fired at a male who was trying to enter his vehicle.

Thereafter, the State charged Parrish, via indictment, with one count of murder, two counts of felony murder, two counts of aggravated assault, one count of possession of a firearm during the commission of a felony, one count of possession of a firearm by a convicted felon, one count of reckless driving, two counts of leaving the scene of an accident, and one count of possession of cocaine. In the same indictment, the State charged Jackson with one count of theft by receiving (of a firearm), one count of possession of a firearm by a convicted felon, one count of filing a false report of a crime, and one count of hindering the apprehension of a criminal. Prior to trial, the State filed notice of its intent to introduce prior bad acts committed by Parrish, and the trial court issued an order ruling that such evidence was admissible.

The case then proceeded to trial, during which the State presented the above-referenced evidence through the testimony of numerous party attendees, the Ph.D. student, the other motorist whose vehicle Parrish struck during his flight, and the investigating officers. The State also presented forensic evidence through the testimony of a GBI firearms expert and a medical examiner, who both opined that

Lumpkin was three to five feet away at the time he was shot and not in Parrish's vehicle. In addition, the State presented the previously mentioned prior bad acts evidence through two police officers, who testified about two separate incidents in which the respective officers attempted to stop Parrish for traffic violations, but he instead fled. In both instances, Parrish lead the officers on a high-speed chase before being apprehended, and, in one instance, he first drove his vehicle directly at the officer before fleeing.

In Parrish's defense, he presented testimony from his own firearms expert, who opined that Lumpkin was much closer than three feet away when Parrish shot him. Parrish testified as well, and claimed that after his collision with Chambliss's SUV, he attempted to provide her with his insurance information but she and other party attendees began threatening him. According to Parrish, others soon began shoving him and he started to fear for his own safety. Parrish further claimed that he then got back into his vehicle to try to leave, but Lumpkin grabbed him, pushed him across the driver's seat, and began choking him. Parrish testified that he began reaching down to the floorboard of the vehicle for anything that would help get Lumpkin to stop his attack and, in doing so, found the handgun, which he did not even realize was in the vehicle. At this point, Parrish claimed that after he raised the weapon, Lumpkin kept

8

choking him, so he fired a shot in his direction and then two more in the air before fleeing as the crowd scattered. And while speeding away from the scene, he threw the handgun into some woods, before colliding with the other motorist, and finally abandoning the vehicle in the apartment complex parking lot.

At the conclusion of the trial, the jury convicted Parrish on voluntary manslaughter (as a lesser-included offense to the count of murder and the two counts of felony murder), one of the aggravated-assault counts, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, reckless driving, both leaving-the-scene-of-an-accident counts, and possession of cocaine. Additionally, the jury acquitted Jackson on all of the charges against him.

After his trial, Parrish obtained new counsel and filed a motion for new trial, in which he enumerated several claims of error, including that his trial counsel rendered ineffective assistance. The State filed a response, and the trial court held a hearing on the matter, during which Parrish's trial counsel testified extensively regarding his representation. Subsequently, the trial court denied Parrish's motion for new trial. This appeal follows.

1. Parrish argues that the trial court erred in allowing him to be impeached with the statement about the shooting drafted by his trial counsel, or alternatively, denying

9

his claim that his counsel rendered ineffective assistance in drafting this statement. We disagree.

(a) *Impeachment Evidence*. Around the same time that Parrish turned himself in to police, his trial counsel provided law enforcement with a statement recounting Parrish's version of the shooting, which he claimed was in self defense. Parrish testified at trial, and during the State's cross-examination, the statement was introduced for impeachment purposes. The trial court admitted the statement despite the objections of Parrish's trial counsel, who argued that Parrish did not draft the statement and had never specifically reviewed its contents. Thereafter, the State cross-examined Parrish regarding the inconsistencies between his direct testimony and the statement prepared by his counsel. Most notably, the State questioned him regarding the contrast in his trial testimony, in which he claimed to be unaware there was a handgun in his vehicle until reaching down to the floorboard for something to ward off Lumpkin's attack, with the claim in the prepared statement that he reached for "my pistol." The State also noted that, again in contrast to his trial testimony, the prepared statement provided to police did not claim Lumpkin was on top of Parrish and choking him when Parrish shot him.

On appeal, Parrish now contends the trial court erred in admitting the prepared statement for impeachment purposes, arguing that the statement was not *his* but, rather, was drafted by his trial counsel without his input and, thus, was essentially inadmissible hearsay. We disagree.

A trial judge has broad discretion to "determine what evidence will be admitted for review by a jury, and such evidentiary decisions will not be disturbed on appeal absent an abuse of discretion."[2] With that deferential standard of review in my mind, we now turn to the relevant statutory provisions, OCGA § 24-8-801 (d) (2) (C) and (D), which provide:

> Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [a] statement by a person authorized by the party to make a statement concerning the subject [or] [a] statement by the party's agent or employee, but not including any agent of the state in a criminal proceeding, concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]

---

[2] *Hines v. State*, 350 Ga. App. 752, 753 (1) (830 SE2d 380) (2019); *see McGarity v. State*, 311 Ga. 158, 163 (3) (856 SE2d 241) (2021) (noting that a trial court's rulings on the admission of evidence are reviewed by for abuse of discretion).

Federal case law—which is relevant in interpreting our Evidence Code[3]—has held that the federal counterpart to this statute (Federal Rule of Evidence 801 (d) (2) (D))—allows statements by an attorney to be admissible against a defendant in criminal cases in certain situations.[4] Additionally, OCGA § 24-6-621 provides that "[a] witness may be impeached by disproving the facts testified to by the witness."[5]

---

[3] *See Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) (explaining that "[m]any provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit."); *Hines*, 350 Ga. App. at 753-54 (1) (same).

[4] *See United States v. Amato*, 356 F3d 216, 218-20 (2nd Cir. 2004) (holding that the district court properly admitted defendant's attorney's letter regarding aspect of case under Rule 801 (d) (2) (D) after defendant's testimony at trial contradicted statement in letter); *United States v. Harris*, 914 F2d 927, 931 (7th Cir. 1990) (finding that defense counsel's out-of-court statements in inquiry into whether witness might have confused defendant's brother with defendant were admissible against defendant as statements of agent on behalf of his principal under Rule 801 (d) (2) (D)); *see also* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 498-99 (6th ed. 2018) (noting that courts have concluded that both Rules 801 (d) (2) (C) and (d) (2) (D) can encompass statements made by an attorney on her client's behalf).

[5] *See* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 369 (6th ed. 2018) (noting OCGA § 24-6-621 has no counterpart in the Federal Rules of Evidence, but federal jurisprudence recognizes impeachment by contradiction and there is some consensus that OCGA § 24-6-621 may be read in conjunction with OCGA § 24-6-607); *Taylor v. State*, 302 Ga. 176, 180 (3) n.5 (805 SE2d 851) (2017) (same).

And a trial court may admit evidence relevant to the issue of impeachment even if "the evidence would not qualify for admission on other grounds."[6] Furthermore, the State has a right to "a thorough and sifting cross-examination of appellant's direct testimony."[7]

But even if the trial court erred in admitting trial counsel's statement about the shooting, we conclude that any alleged error in this regard was harmless. In making this determination, we review the record *de novo* and "weigh the evidence as we would expect reasonable jurors to have done so."[8] And importantly, the test for determining nonconstitutional harmless error is "whether it is highly probable that the error did not contribute to the verdict."[9]

---

[6] *Bolah v. Driskell*, 318 Ga. App. 405, 407 (734 SE2d 108) (2012); *accord Pouncey v. Adams*, 206 Ga. App. 126, 127 (424 SE2d 376) (1992).

[7] *Taylor*, 302 Ga. at 180; *see* OCGA § 24-6-611 (b) ("A witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party. . . ."); *Griffin v. State*, 309 Ga. 860, 871 (5) (a) (849 SE2d 191) (2020) (same).

[8] *Jones v. State*, 301 Ga. 544, 551 (3) (802 SE2d 234) (2017) (punctuation omitted); *accord Webb v. State*, 359 Ga. App. 453, 460 (2) (858 SE2d 546) (2021).

[9] *Jones*, 301 Ga. at 551 (3) (punctuation omitted); *accord Webb*, 359 Ga. App. at 460 (2).

Here, the evidence supporting Parrish's convictions—including that he was not justified in using deadly force against Lumpkin—was overwhelming. It is undisputed that Parrish was driving the vehicle that crashed into Chambliss's SUV and that he tried to leave the scene. When the damage to his vehicle prevented him from leaving the scene, multiple witnesses—including the Ph.D. student who had no personal relationship with the party attendees—testified that Parrish stated he did not want the police to be called. Thereafter, several witnesses recounted that Parrish struck Chambliss, knocking her down. And while witnesses claimed that some mutual pushing then ensued, those same witnesses also testified that this shoving subsided when Parrish ran back to the driver's side of his vehicle, reached into the center console, drew a handgun, and fired at Lumpkin from a few feet away. More importantly, other than Parrish, not a single witness to the shooting testified that Lumpkin or any other party attendee was attacking Parrish when he drew his handgun. Furthermore, the State's forensic evidence—including the small amount of gunshot residue inside the vehicle, the lack of blood in the vehicle or on Parrish, and the lack of any gunpowder burn injuries to Lumpkin—supported the party attendees' account of the shooting. Finally, it is undisputed that Parrish fled the scene, discarded his weapon, left the scene of a second accident, abandoned Jackson's vehicle, and

14

never contacted the police until he eventually turned himself in. Given these particular circumstances, the undisputed facts and testimony from multiple eyewitnesses undermined Parrish's testimony far more than the discrepancies between his testimony and trial counsel's statement. Accordingly, it is highly probable that Parrish's trial counsel's written statement did not contribute to the jury's guilty verdict.[10]

---

[10] *See Brewer v. State*, 301 Ga. 819, 821-22 (4) (804 SE2d 410) (2017) (holding that any error in excluding evidence of victim's prior crimes was harmless given that multiple witnesses undermined defendant's self-defense claim); *Rivera v. State*, 295 Ga. 380, 382 (2) (761 SE2d 30) (2014) (holding that it is highly probable that any error in admitting the evidence about defendant's prior bad act did not contribute to the jury's verdict because of the overwhelming evidence of defendant's guilt, including defendant's admissions that he stabbed victim, and the testimony of multiple eyewitnesses and security footage contradicting defendant's self-defense claim); *Adams v. State*, 316 Ga. App. 1, 4-5 (1) (728 SE2d 260) (2012) (holding that even if trial court erred in admitting out-of-court statement, such error was harmless given overwhelming evidence that defendant committed burglary, including defendant being identified in surveillance video of the crime); *Johnson v. State*, 307 Ga. App. 791, 793 (706 SE2d 150) (2011) (concluding that alleged error in admitting the prior-convictions evidence was harmless because eyewitness testimony that victim was unarmed, defendant initiated attack, and defendant's flight constituted overwhelming evidence that defendant did not stab victim in self-defense); *Massey v. State*, 306 Ga. App. 180, 182-83 (2) (b) (702 SE2d 34) (2010) (finding that any error in trial court's admission of defendant's prior conviction for impeachment evidence was harmless in prosecution for burglary, given the overwhelming evidence of guilt, including victim seeing him inside her home and him being caught in possession of victim's laptop).

15

(b) *Ineffective assistance of counsel.* Alternatively, Parrish maintains that his counsel rendered ineffective assistance by drafting the statement about the shooting without his input and then providing it to the police. Again, we disagree.

To evaluate Parrish's claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[11] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[12] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[13] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[14] In fact, the

---

[11] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[12] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[13] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[14] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by

16

reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[15] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[16] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[17] With these guiding principles in mind, we turn to Parrish's specific claim of error.

Parrish argues that his trial counsel rendered ineffective assistance by drafting the statement regarding the shooting without his input, specifically claiming that, in

whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[15] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[16] *Id.*

[17] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Howard v. State*, 340 Ga. App. 133, 139 (3) (796 SE2d 757) (2017); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

17

doing so, his counsel violated the attorney-client privilege and then helped to undermine his credibility when the State was able to use the statement for impeachment purposes on cross-examination. But the first part of Parrish's argument completely lacks merit. It is well established that "[t]he attorney-client privilege protects communications between the client and the attorney that are intended to be confidential; the protection does not extend to communications which are not of a confidential nature."[18] Indeed, it does not extend to "client communications to an attorney for the purpose of being conveyed by the attorney to a third party."[19] And in this matter, during the hearing on Parrish's motion for new trial, his trial counsel testified that while Parrish never signed or read the statement, he provided counsel with the information necessary to draft it, was aware that counsel intended to inform the police that Parrish acted in self-defense, and explicitly agreed with that course of action. Needless to say, the trial court was authorized to credit trial counsel's

---

[18] *Bryant v. State*, 282 Ga. 631, 636 (4) (651 SE2d 718) (2007); *accord Rogers v. State*, 290 Ga. 18, 20 (2) (717 SE2d 629) (2011); *Davis v. State*, 285 Ga. 343, 347 (6) (676 SE2d 215) (2009).

[19] *Bryant*, 282 Ga. at 636 (4); *accord Howard v. State*, 279 Ga. 166, 169-70 (3) (611 SE2d 3) (2005).

testimony,[20] and the evidence shows that the statement was intended to be conveyed to third parties and, therefore, was not privileged.[21] As a result, the trial court did not err in denying Parrish's claim of ineffective assistance in this regard.

As to the second part of this contention, during the motion-for-new-trial hearing, Parrish's counsel testified that he drafted the statement and provided it to the police for the tactical purpose of informing them that this was an incident of self-defense and possibly getting charges dropped without his client having to testify. In fact, trial counsel further testified that he had successfully employed this same tactic in previous self-defense cases and that Parrish gave him permission to do so in this case. Suffice it to say, this is exactly the kind of strategic decision that, generally, "cannot and will not serve as the basis for an ineffective assistance claim."[22] And counsel's reasoned explanation for his strategy here was "not so unsound that no

---

[20] *See Littlejohn v. State*, 320 Ga. App. 197, 208 (5) (b) (739 SE2d 682) (2013) (finding that trial court was authorized to believe trial counsel's testimony that defendant never reported that jury saw him wearing shackles in court, thereby prejudicing him, and its resolution of that issue was not clearly erroneous).

[21] *See supra* note 19.

[22] *Issa v. State*, 340 Ga. App. 327, 344 (8) (796 SE2d 725) (2017) (punctuation omitted).

19

reasonable lawyer would have pursued it."[23] Thus, trial counsel's decision to provide

the statement to the police did not constitute deficient performance.[24] Furthermore,

the evidence supporting Parrish's convictions was overwhelming and, therefore, he

has failed to show that his trial counsel's actions prejudiced him.[25] Accordingly, the

---

[23] *Id.* at 344 (8) (punctuation omitted); *see Pope v. State*, 311 Ga. 557, 559 (858 SE2d 492) (2021) (noting that "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course" (punctuation omitted)).

[24] *See Stuckey v. State*, 301 Ga. 767, 772 (2) (b) (804 SE2d 76) (2017) (holding that trial counsel's failure to object to 400-page printout of 15-year-old defendant's social media account that was comprised mainly of sexually provocative photographs of defendant and other people's comments on photographs was matter of reasonable trial strategy as it showed that defendant sought approval of older men, including boyfriend on whom he blamed murder); *Issa*, 340 Ga. App. at 343-44 (8) (concluding that trial counsel's arguments in prosecution for crimes arising from home invasion, suggesting that unknown third perpetrator shot defendant outside of victims' home when he abandoned robbery plan and then faked gunshot wound during struggle with victim in order to implicate defendant, represented a strategic decision that could not serve as the basis for an ineffective-assistance-of-counsel claim). *Cf. Pope*, 311 Ga. at 560-61 (holding that defendant failed to show how his trial counsel's strategic decision not to seek a pre-trial immunity hearing and thereby reveal the defense theory to the prosecutor before trial, and instead to wait and present self-defense claim to the jury, was objectively unreasonable); *Dent v. State*, 303 Ga. 110, 119 (4) (d) (810 SE2d 527) (2018) (finding that trial counsel's strategic decision not to file pre-trial motion for immunity from prosecution because he did not want to expose defendant to pre-trial cross-examination was not unreasonable, and therefore, defendant failed to show that trial counsel performed deficiently).

[25] *See Watts v. State*, 308 Ga. 455, 461 (2) (841 SE2d 686) (2020) (holding that defendant failed to show that his trial counsel's decision not to impeach witness

20

trial court did not err in denying Parrish's ineffective assistance claim in this regard either.

2. Parrish also contends that the trial court erred by providing a conflicting and confusing jury instruction as to his justification defense. Yet again, we disagree.

Importantly, Parrish did not object to the particular portion of the trial court's jury charges, which he now cites as constituting error. And under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[26] The failure to so object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the

---

prejudiced his case given overwhelming evidence that shooting was not in self-defense, including testimony from multiple witnesses that victim was not armed, did not threaten defendant, was still a considerable distance away when defendant opened fire, and that defendant fled scene); *Lambert v. State*, 287 Ga. 774, 777 (2) (700 SE2d 354) (2010) (concluding that because the evidence of defendant's guilt was overwhelming, there was no reasonable probability that the outcome of his murder trial would have been more favorable had counsel attempted to prevent the jury from hearing defendant's version of events via his statement to police).

[26] OCGA § 17-8-58 (a).

21

parties."[27] In such cases, as the Supreme Court of Georgia has explained, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[28] Consequently, because Parrish failed to object to this portion of the trial court's jury charges, our review is limited to consideration in this regard.[29]

Turning to the instructions at issue, the charge to the jury is "to be taken as a whole and not out of context when making determinations as to its correctness."[30]

---

[27] OCGA § 17-8-58 (b); *see also Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial); *Issa*, 340 Ga. App. at 336 (4) (same).

[28] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Issa*, 340 Ga. App. at 336 (4); *see Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019) ("When reviewing a jury instruction for plain error that has not been affirmatively waived, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (punctuation omitted)).

[29] *See* OCGA § 17-8-58 (b); *see also Russell v. State*, 309 Ga. 772, 782 (3) (a) (848 SE2d 404) (2020) (holding that because defendant's trial counsel failed to object to the pretrial jury charge, defendant's argument that the charge was inadequate is limited to a review of the charge for plain error).

[30] *Issa*, 340 Ga. App. at 336 (4) (punctuation omitted); *see Drayton v. State*, 297 Ga. 743, 748-49 (2) (b) (778 SE2d 179) (2015) (explaining that before a jury charge will be considered reversible error, it must be considered in the context of the jury instructions as a whole).

22

And in this matter, the trial court provided the jury with the following instructions on the issue of justification:

Now, ladies and gentlemen, an affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Once an affirmative defense is raised, the burden is on the State to disprove it beyond a reasonable doubt.

A person is justified in using force against another person when, and to the extent that, he reasonably believes that such force is necessary to defend himself against the other's imminent use of unlawful force. The person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself.

The State has the burden of proving beyond a reasonable doubt that the defendant was not justified.

I charge you further that two elements must be present before the use of deadly force is justified as self-defense. One, the danger to the defendant must have been imminent; and, two, the defendant must have reasonably believed that such force was necessary to prevent death or great bodily harm to himself.

Now, ladies and gentlemen, a person is justified in using force against another person when, and to the extent that, the person reasonably believes that such force is necessary to prevent or terminate

23

the other's unlawful entry into or attack upon a motor vehicle. A person is justified in the use of force that is intended or likely to cause death or great bodily harm only if the entry is made or attempted in a violent and disorderly manner and the person reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person present in the motor vehicle and that such force is necessary to prevent the assault or offer of personal violence.

In applying the law of self-defense, ladies and gentlemen, a defendant is justified to use deadly force against another person in defense of self. The standard is whether the circumstances were such that they would excite not merely the fears of the defendant but the fears of a reasonable person. For the use of deadly force to be justified under the law, the defendant must truly have acted under the influence of these fears and not in a spirit of revenge.

Now, ladies and gentlemen, one who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense or in using force that is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to oneself.

On appeal, Parrish claims that these instructions were conflicting and, thus, confusing to the jury. Particularly, he argues that instructing the jury on the use of

deadly force in defense of a motor vehicle[31] in the middle of the general instructions on self-defense was confusing, because while the former instruction explains that use of deadly force is allowed if one reasonably believes such force is necessary to prevent a violent entry of a vehicle for the purpose of an assault, the latter requires that the defendant reasonably believe that deadly force is necessary to prevent death or harm to himself.[32] But Parrish sought both of these charges in his "Defendant's Requests to Charge" and reiterated that request during the charge conference.

---

[31] *See* OCGA § 16-3-23 (1) ("A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if . . . [t]he entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence[.]"); OCGA § 16-3-24.1 ("As used in Code Sections 16-3-23 and 16-3-24, the term 'habitation' means any dwelling, motor vehicle, or place of business, and 'personal property' means personal property other than a motor vehicle.").

[32] *See* OCGA § 16-3-21 (a) ("A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.").

25

Consequently, Parrish arguably "invited the alleged error, and it therefore provides no basis for reversal."[33]

Nevertheless, even if not waived, Parrish has not shown plain error. Of course, in reviewing a challenge to the trial court's jury instructions, we view the charge "as a whole to determine whether the jury was fully and fairly instructed on the law of the case."[34] Viewing the jury instructions given in this case in that context, the trial court properly charged the jury on the use of deadly force in defense of a motor vehicle and use of deadly force in self-defense. In fact, the trial court's instructions were nearly identical to the suggested pattern jury instructions on these issues.[35] And Parrish

---

[33] *Shank v. State*, 290 Ga. 844, 845 (2) (725 SE2d 246) (2012); *see Vasquez v. State*, 306 Ga. 216, 229 (2) (c) (830 SE2d 143) (2019) (noting that an affirmative waiver may occur when a defendant explicitly requests a jury instruction that he later argues on appeal should not have been given); *Brown v. State*, 298 Ga. 880, 882 (3) (785 SE2d 512) (2016) (holding that because defendant agreed that his justification instruction only applied to one victim, any error regarding such charge was invited and, thus, defendant waived even plain error review of such charge); *Cheddersingh v. State*, 290 Ga. 680, 682-84 (2) (724 SE2d 366) (2012) (explaining that affirmative waiver, as opposed to mere forfeiture by failing to object, prevents a finding of plain error under OCGA § 17-8-58 (b)).

[34] *Walker v. State*, 308 Ga. 33, 36 (2) (838 SE2d 792) (2020) (punctuation omitted); *accord Martin v. State*, 310 Ga. 658, 664 (3) (852 SE2d 834) (2020).

[35] *See* Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.) §§ 3.12.10, 3.16.20.

points to no authority for "the proposition that the pattern charge[s] [are] inadequate."[36] Indeed, these charges were proper concepts of law, regardless of the order in which they were provided, and given that Parrish has provided no evidence that the jury was either misled or confused, he has failed to show that the trial court plainly erred.[37]

---

[36] *Williams v. State*, 304 Ga. 455 459 (3) (818 SE2d 653) (2018); *accord Martin v. State*, 308 Ga. 479, 483 (2) (841 SE2d 667) (2020); *see Norris v. State*, 309 Ga. 11, 13-14 (2) (843 SE2d 837) (2020) (holding that defendant's argument that she was entitled to charge on mistake of fact is "so convoluted and unsupported by Georgia authority directly on point that we cannot say that the trial court's ruling amounted to clear or obvious error beyond reasonable dispute" (punctuation omitted)); *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) (explaining that "[a]n error cannot be plain where there is no controlling authority on point . . ." (punctuation omitted)).

[37] *See Martin*, 310 Ga. at 663-64 (3) (holding that trial court's instructions that the testimony of a single witness is sufficient to establish a fact, but that accomplice testimony must be corroborated were proper concepts of law, irrespective of the order in which they were given, and though it might have been preferable for the trial court to have given the charges in a different order, because the charge, as a whole, was complete, and the defendants provided no evidence that the jury was either misled or confused, the defendants failed to show plain error); *Morris v. State*, 308 Ga. 520, 529-30 (4) (842 SE2d 45) (2020) (finding that the charge given by the trial court was not error as it was an accurate statement of the law that was properly adjusted to the evidence and circumstances of the case, and defendant offered no evidence that the jury was confused or misled by this instruction); *Williams*, 304 Ga. at 458-59 (3) (concluding that because trial court's charge was substantially identical to the suggested pattern jury instruction on good character evidence and defendant points to no authority for the proposition that the pattern charge is inadequate, trial court's charge was not plain error).

3. Parrish further contends that the trial court erred in refusing to instruct the jury as to aggravated assault by the victim, and that such constituted a forcible felony, in connection with his justification defense. Once again, we disagree.

Importantly, a trial court's refusal to give a requested jury charge is "not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge."[38] And this Court reviews "a trial court's refusal to give a requested jury charge under an abuse of discretion standard."[39] In this matter, in his "Requests to Charge," Parrish sought a charge on simple assault and aggravated assault with a deadly weapon, that being one's hands, and that aggravated assault was a forcible felony, all of which pertained to Lumpkin's alleged conduct at the time of the shooting. During the charge conference, when the trial court stated that it was not inclined to provide those charges because Lumpkin was not charged with a crime, Parrish objected and argued for their inclusion, claiming that because there was some factual basis for the charges—his testimony that Lumpkin was choking him—the court should provide

[38] *Jones v. State*, 318 Ga. App. 26, 33 (3) (733 SE2d 72) (2012) (punctuation omitted); *accord Turner v. State*, 314 Ga. App. 263, 264 (1) (724 SE2d 6) (2012).

[39] *Jones*, 318 Ga. App. at 33 (3) (punctuation omitted); *accord Turner*, 314 Ga. App. at 263-64 (1).

28

them. But despite Parrish's argument, the trial court maintained its position, explaining that the charges on self-defense would encompass instructing the jury that one could employ deadly force to prevent death or serious bodily harm.

Subsequently, during their respective closing arguments, both the State and Parrish explained that self-defense could be employed to prevent a forcible felony. Parrish further argued, without objection, that the alleged choking was an aggravated assault. And thereafter, the trial court thoroughly instructed the jury on the defense of justification generally, the use of force in self-defense, including deadly force, and the use of force in defense of a motor vehicle. In addition, the court charged the jury on the crime of aggravated assault with a deadly weapon, albeit in the context of the charges against Parrish. Given these circumstances, the jury had sufficient direction in order to intelligently consider Parrish's theory of justification based on his claim that Lumpkin committed aggravated assault when he allegedly tried to choke Parrish. And in light of the jury instructions as a whole, Parrish has not shown that the trial court erred in refusing to give the additional simple or aggravated-assault instruction.[40]

---

[40] *See Redding v State*, 311 Ga. App. 757, 759-60 (2) (858 SE2d 469) (2021) (explaining that trial court did not err in refusing to give mistake-of-fact charge, despite defendant's theory that he mistakenly thought victim had a gun, because

But even if the trial court's refusal to provide this instruction amounted to error, it would be harmless given that "it is highly probable that the error did not contribute to the verdict."[41] As discussed *supra*, the evidence was overwhelming in light of the fact that Parrish's self-defense claim was contradicted by, *inter alia*, numerous eyewitnesses to the shooting.[42] Accordingly, it was highly probable that the

---

lengthy series of pattern jury instructions on justification and self-defense were sufficient); *Hood v. State*, 303 Ga. 420, 425-26 (2) (a) (811 SE2d 392) (2018) (holding that trial court did not plainly err in failing to instruct jury that victim's alleged attack on defendant was the forcible felony of aggravated assault given that jury instructions as a whole, including charges on justification generally, the use of force in self-defense, and the use of force in defense of habitation, were sufficient to allow jury to intelligently consider defendant's self-defense theory); *see also Mohamud v. State*, 297 Ga. 532, 535 (2) (c) (773 SE2d 755) (2015) (holding that defense counsel's failure to request instruction regarding the definition of a forcible felony, or a justification instruction that included the definition of aggravated assault as a forcible felony, was not ineffective assistance, given that the trial court instructed the jury as to when self-defense is warranted).

[41] *Calmer v. State*, 309 Ga. 368, 372 (2) (c) (846 SE2d 40) (2020) (punctuation omitted).

[42] *See Jones v. State*, 310 Ga. 886, 889-90 (2) (855 SE2d 573) (2021) (holding that any error in trial court's failure to give justification instruction was harmless in prosecution for murder because evidence supporting conviction made it highly probable that the jury's verdict was unaffected by such refusal); *Calmer*, 309 Ga. at 372-73 (2) (c) (assuming, but not deciding, that the testimony of the State's witnesses provided the slight evidence necessary to support charges on self-defense and no duty to retreat, the trial court's failure to give the charges was harmless in light of evidence undercutting defendant's theory of self-defense).

trial court's alleged instructional error did not contribute to the verdict, and therefore, Parrish has failed to show reversible error in this regard.

For all these reasons, we affirm Parrish's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Pinson, JJ., concur.*