NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 5, 2024

S24A0148.  MADERA v. THE STATE.

BETHEL, Justice.

Francisco Javier Madera was convicted of the malice murder of Juan Carlos Zambrano.[1] On appeal, Madera raises five claims of error: (1) the trial court erred by denying his motion for new trial on the general grounds; (2) the trial court erred by admitting video footage of the injured Zambrano; (3) the trial court erred by admitting evidence pursuant to OCGA § 24-8-803 (5); (4) trial

---

[1] The crimes occurred on October 13, 2017. In January 2018, a Cobb County grand jury indicted Madera for malice murder, felony murder, and aggravated assault. Following a September 2019 jury trial, Madera was found guilty of all counts. The trial court sentenced Madera to serve life in prison for malice murder; the felony murder count was vacated by operation of law, and the aggravated assault count merged for sentencing. Madera filed a timely motion for new trial, which he amended through new counsel. Following a hearing, the trial court denied the motion, as amended, on August 2, 2023. Madera thereafter filed a timely notice of appeal, and the case was docketed to this Court's term commencing in December 2023 and submitted for a decision on the briefs.

counsel was ineffective in two respects; and (5) the cumulative effect of the trial court's errors and counsel's deficient performance requires a new trial. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed as follows. On the night of October 13, 2017, Madera, Zambrano, and others attended a party at the Cobb County home of Elma Escobar. While Madera and Zambrano were dancing with the same woman, the two began arguing, and, later in the evening, they physically fought each other. Several partygoers separated Madera and Zambrano, and Escobar asked Madera to leave.

Escobar walked Madera to his vehicle, and Madera began to leave. As Escobar was walking back to the house, however, she heard Madera "unlocking" his firearm and saw that he had stopped his vehicle in the road and had exited the vehicle. Though Escobar grabbed Madera and tried to calm him, he pointed his gun at Zambrano and fired. Witnesses testified that, immediately before the shooting, Zambrano was hugging another partygoer, and three

2

witnesses testified that Zambrano did not have anything in his hands when he was shot and did not have a gun in his possession that night. Escobar heard one gunshot followed by two more and then saw Zambrano clutching his abdomen. Zambrano fell to the ground after being shot. Edwin Santos Saez, another partygoer, testified that, after Zambrano fell to the ground, Madera shot him again. Another partygoer heard Madera direct two slurs at Zambrano during the shooting. After shooting Zambrano, Madera fled and was arrested two days later at a hotel in Little Rock, Arkansas.

Escobar called an ambulance and the police, but Zambrano asked to be driven to the hospital. Zambrano was placed in Saez's vehicle, and en route to the hospital, Saez crossed paths with and flagged down officers responding to Escobar's earlier call. Officers found the unconscious Zambrano in the front passenger seat; he had gunshot wounds to the left side of his abdomen and the upper area of his back. The officers applied pressure to Zambrano's wounds while waiting for emergency medical services to arrive, and their

actions were captured by their body cameras. Zambrano was transported to the hospital, where he died as a result of his wounds the following day.

At trial, Madera testified that he acted in self-defense after seeing a snub-nosed revolver in Zambrano's right hand. The State, however, presented evidence showing that no weapons were found on Zambrano's person or during a search of Saez's vehicle and that no guns or ammunition were found during a search of Escobar's home the day after the shooting.

On appeal, Madera first argues that the trial court should have granted him a new trial on the "general grounds" because, he says, some of the evidence against him was conflicting. See OCGA §§ 5-5-20 (authorizing grant of new trial if the trial judge concludes that the jury's verdict is "contrary to evidence and the principles of equity and justice") and 5-5-21 (authorizing grant of new trial if the trial judge concludes that the jury's verdict is "decidedly and strongly against the weight of the evidence"). The general grounds require a trial court "to exercise a broad discretion to sit as a

4

'thirteenth juror'" and "consider some of the things that he cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *Hinton v. State*, 312 Ga. 258, 262 (1) (c) (862 SE2d 320) (2021). "We review whether the trial court exercised its discretion as the thirteenth juror, but the decision to grant a new trial on the general grounds is vested solely in the trial court and is not subject to our review." *Weems v. State*, 318 Ga. 98, 102-103 (3) (___ SE2d ___) (2024). Here, in its order denying Madera's motion for new trial, the trial court, after stating that it independently reviewed the evidence and considered the credibility of witnesses, expressly rejected Madera's general grounds claim. Thus, the trial court's order shows that the court properly exercised its discretion under OCGA §§ 5-5-20 and 5-5-21, and Madera's argument "is otherwise not subject to review by this Court."[2] See *Weems*, 318 Ga.

---

[2] Madera does not separately argue that the evidence was insufficient to support his conviction as a matter of constitutional due process under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). In previous appeals in which an appellant raised a general-grounds claim, we have often

5

at 103 (3).

2. Madera next challenges the admission of a video and audio recording from a police officer's body camera which showed emergency responders rendering aid to the wounded Zambrano in Saez's vehicle. Specifically, Madera asserts for the first time on appeal that the admission of an "excessive number of photographic exhibits" at trial, including autopsy photographs, rendered the body camera footage cumulative and, thus, "unfairly prejudicial." Because Madera did not object on this basis at trial, we review this claim only for plain error.[3] See *Gates v. State*, 298 Ga. 324, 327 (3)

reviewed the sufficiency of the evidence as a matter of constitutional due process, though many of us have questioned the soundness of that approach. See *King v. State*, 316 Ga. 611, 616 (2) n.8 (889 SE2d 851) (2023). Like in *King*, however, we need not determine the propriety of that approach in this case because the evidence against Madera was constitutionally sufficient to affirm his conviction.

[3] In a pretrial motion in limine, Madera sought to have the footage excluded on the basis that it had "no relevance to any matter in dispute." Noting that the footage showed Zambrano "injured, lying down in a car, and moaning and writhing in pain," Madera argued that the footage would "no doubt be shocking to a jury" and that, as a result, "its prejudicial effect substantially outweighs any probative value that it may have." But the motion in limine did not expressly challenge the footage as cumulative and Madera did not lodge a separate contemporaneous objection on the related basis he now argues on appeal, so our review is limited to plain error. See *Washington v. State*, 312 Ga. 495, 500 (2) (b) n.8 (863 SE2d 109) (2021); *Williams v. Harvey*,

(781 SE2d 772) (2016); OCGA § 24-1-103 (a), (d). To establish plain error, Madera bears the burden of demonstrating that the alleged error "was not affirmatively waived"; that it was "clear and not open to reasonable dispute"; that it "affected his substantial rights"; and that it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Jones v. State*, 317 Ga. 466, 473 (2) (893 SE2d 741) (2023) (citations and punctuation omitted). And where an appellant fails to establish one element of the plain error test, we need not consider the others. See id.

Madera argues only that the footage at issue should have been excluded as cumulative of other exhibits admitted at trial, specifically autopsy photographs. It is well settled, however, that the erroneous admission of evidence that is merely cumulative of other properly admitted evidence is generally harmless, particularly where the evidence of the defendant's guilt is strong. See, e.g., *Allen*

311 Ga. 439, 452 (2) (858 SE2d 479) (2021) ("Although a party does not waive an error by failing to object to admission of evidence after a motion in limine is denied, this rule cannot be invoked to preserve a different, if perhaps related, error." (citation and punctuation omitted)).

7

*v. State*, 310 Ga. 411, 417 (3) (851 SE2d 541) (2020); *Smith v. State*, 307 Ga. 106, 115 (5) (834 SE2d 750) (2019). And here, Madera does not argue that the autopsy photographs were improperly admitted, and the evidence of his guilt, which included the testimony of multiple eyewitnesses who rebutted his claim of self-defense, was strong. Thus, even assuming that it was clear error to admit the footage showing the injured Zambrano, we conclude that Madera "cannot establish that the error affected his substantial rights because he has not made an affirmative showing that the error probably affected the outcome of his trial." *Allen*, 310 Ga. at 416 (3) (rejecting plain error claim where evidence at issue "was cumulative of other unchallenged evidence" and evidence of defendant's guilt was strong). See also *Jones*, 317 Ga. at 473 (2) (appellant failed to show how alleged erroneous admission of evidence affected his substantial rights where the evidence "was cumulative of other properly admitted evidence at trial" and there was "substantial evidence of [appellant's] guilt"); *Perryman-Henderson v. State*, 316 Ga. 626, 632-633 (3) (889 SE2d 814) (2023) (appellant failed to show

8

how alleged error affected his substantial rights in light of the evidence against him, including eyewitness testimony that was not consistent with his version of events). Accordingly, this plain error claim fails.

3. Madera next contends that the State failed to lay a proper foundation for admitting as a recorded recollection a witness's videotaped statement to investigators, see OCGA § 24-8-803 (5), and that the trial court therefore erred by admitting it. Because Madera did not object on this ground at trial,[4] we review this claim for plain error. See *Varner v. State*, 306 Ga. 726, 730 (2) (b) (832 SE2d 792) (2019).

While testifying on direct examination, Saez initially was unable to recall whether Madera said anything to Zambrano as Madera fired his weapon, though Saez had given a videotaped statement to police shortly after the shooting during which he recounted that Zambrano "was on the ground, and [Madera] walked

---

[4] At trial, Madera objected to the admission of this evidence only on Confrontation Clause grounds.

up to him and said what's up now, or what's up [and] shot him again." Pursuant to OCGA § 24-8-803 (5) ("Rule 803 (5)"),[5] the State then moved to admit a portion of Saez's videotaped statement as a past recollection recorded. Outside the jury's presence, Saez testified that he recalled giving the statement, that he watched the recording of the statement, that his memory was "a bit" better when he made the statement than it was at trial, and that he was truthful when he made the statement. The trial court found a sufficient foundation to admit Saez's videotaped statement, Madera raised no further objection, and a brief portion of Saez's statement was played in the jury's presence.

Pointing to Saez's response that his memory was "a bit" better at the time of the interview, Madera now complains that Saez's

---

[5] Rule 803 (5) states that the following is not excluded by the general rule against hearsay evidence:

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but shall not itself be received as an exhibit unless offered by an adverse party[.]

10

testimony was insufficient to lay a foundation for the admission of the videotaped statement under Rule 803 (5). As Madera reads it, our decision in *Pierce v. State*, 302 Ga. 389, 391-393 (1) (a) (807 SE2d 425) (2017)—the sole case on which Madera relies—held that the "vital element" for laying a foundation under Rule 803 (5) is an "absolute affirmative" statement that the witness's memory was better when the recorded recollection was made. But *Pierce* imposes no such requirement. Instead, *Pierce* makes clear that the pertinent analysis is whether the witness's testimony "was sufficient to establish under [Rule 803 (5)] that the [recorded recollection] concerned a matter about which [the witness] once had knowledge but at trial had insufficient recollection, which was made or adopted when the matter was fresh in his memory, and which correctly reflected his knowledge." 302 Ga. at 392-393 (1) (a). As Madera points to no precedent imposing a requirement that the witness testify in the "absolute affirmative" that his memory was better when the recorded recollection was made and we are aware of none, he has failed to show that the trial court committed clear and

11

obvious error, and thus no plain error, in admitting the brief portion of Saez's interview pursuant to Rule 803 (5). See *Clay v. State*, 309 Ga. 593, 597 (4) (a) (847 SE2d 530) (2020) ("[A]n error cannot be plain where there is no controlling authority on point." (citation and punctuation omitted)).

4. Madera argues that his trial counsel was constitutionally ineffective in two ways. To succeed on these claims, Madera must show both that trial counsel's performance was deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). To establish deficiency, Madera "must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Pope v. State*, 311 Ga. 557, 559 (858 SE2d 492) (2021) (citation and punctuation omitted). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Davis v. State*, 299 Ga.

12

180, 183 (2) (787 SE2d 221) (2016) (citation and punctuation omitted). To establish prejudice, Madera must show a reasonable probability that, but for counsel's deficient performance, the result at trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B). "We need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Suggs v. State*, 310 Ga. 762, 768 (7) (853 SE2d 674) (2021). "[A] trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous," while "[c]onclusions of law based on those facts are reviewed de novo." *Taylor v. State*, 315 Ga. 630, 647 (5) (b) (884 SE2d 346) (2023) (citation and punctuation omitted).

(a) Madera contends that trial counsel did not conduct an adequate investigation of his case, pointing to a litany of actions that, he says, counsel failed to undertake in preparing the case for trial. But even assuming that counsel's investigation was inadequate, Madera "has not suggested, much less shown, what further investigation would have revealed or how it would have

13

helped his defense" and, thus, "has failed to prove the required prejudice." *Suggs*, 310 Ga. at 768 (7) (a). See also *Lupoe v. State*, 300 Ga. 233, 241 (2) (b) (794 SE2d 67) (2016) ("To show prejudice on a claim that trial counsel failed to adequately investigate the case, [a defendant must] at least make a proffer as to what additional investigation would have uncovered, and not merely speculate that such information exists and would have made a difference." (citation and punctuation omitted)). Accordingly, his argument that trial counsel was ineffective on this ground fails.

(b) Madera also contends that trial counsel was ineffective for failing to pursue a pretrial motion for immunity based on justification. See OCGA § 16-3-24.2 ("A person who uses threats or force in accordance with [certain statutes governing justification as a defense, including self-defense,] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under [OCGA §§ 16-11-120 to 16-11-125]."). In rejecting this claim below, the trial court credited counsel's testimony at the

14

motion-for-new-trial hearing that he "believed [Madera] was unlikely to prevail in an immunity motion" and "wanted the State to have to grapple with [Madera's] theory of defense and [Madera's] testimony for the first time at trial." On that basis, the trial court concluded that counsel made a reasonable strategic decision not to pursue such a motion and that Madera had failed to establish that counsel's decision was unreasonable.

On appeal, Madera, pointing to his own testimony at the motion-for-new-trial hearing, argues only that trial counsel "did not thoroughly discuss with him the prospect of filing [a pre-trial immunity] motion" and that he "disagreed" with counsel's strategy. But Madera's after-the-fact disagreement with trial counsel's strategy does not mean that the strategy was objectively unreasonable. See *Szorcsik v. State*, 303 Ga. 737, 743 (5) (814 SE2d 708) (2018) ("[T]he fact that the trial counsel . . . made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree does not require a finding that the representation below was so inadequate

15

as to amount to a denial of effective assistance of counsel." (citations and punctuation omitted)). Madera otherwise makes no attempt to show "how his trial counsel's strategic decision not to reveal the defense theory to the prosecutor before trial, and instead to wait and present [the] self-defense claim to the jury, was objectively unreasonable." *Pope,* 311 Ga. at 560-561 (where trial counsel testified that "she did not think that the trial judge would find [a pretrial immunity motion] sufficiently compelling to grant [and] just saved it for trial," appellant failed to show that counsel's strategic decision was unreasonable); see also *Dent v. State*, 303 Ga. 110, 119 (4) (d) (810 SE2d 527) (2018) (where trial counsel testified that he strategically decided to forgo filing a pretrial immunity motion "as he did not want to expose [appellant] to pre-trial cross-examination from the State, thereby previewing [appellant's] anticipated trial testimony, and that he chose to attempt to demonstrate self-defense to the jury, as opposed to the judge," appellant failed to show that counsel's "tactical decision was unreasonable"). Madera thus has failed to show that counsel's performance was constitutionally

16

deficient, and this claim fails.

5. Finally, Madera argues that the cumulative effect of the trial court's errors and trial counsel's deficient performance requires a new trial. But here, we have identified no trial court error, and we have assumed deficiency with respect to only one alleged instance of counsel's ineffective assistance and concluded that Madera failed to show he was prejudiced thereby. Thus, "there are no errors to aggregate, and his claim of cumulative error also fails." *Blocker v. State*, 316 Ga. 568, 583 (5) (889 SE2d 824) (2023).

*Judgment affirmed. All the Justices concur.*